HONG KONG DEPOSIT AND GUARANTY COMPANY LIMITED, Michael J. Johnson and Eoghan M. McMillan, as Liquidators of Hong Kong Deposit and Guaranty Company Limited, Plaintiffs,

v.

Milton L. HIBDON and John M. Shaheen, Defendants.

HONG KONG DEPOSIT AND GUARANTY COMPANY LIMITED, Michael J. Johnson and Eoghan M. McMillan, As Liquidators of Hong Kong Deposit and Guaranty Company Limited, Bil (Vila) Bank Limited, and Stanley Uren, As Liquidator of Bil (Vila) Bank Limited, Plaintiffs,

v.

Bradford A. SHAHEEN, Defendant.

Nos. 83 Civ. 5895, 83 Civ. 5896.

United States District Court, S.D. New York.

Feb. 25, 1985.

Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiffs; Evan A. Davis, Douglas B. Levene, Robert T. Greig, Mark P. Friedman, New York City, of counsel.

Thomas A. Andrews, P.C., New York City, for defendants Milton Hibdon and Bradford Shaheen; Howard F. Husum, New York City, of counsel.

EDWARD WEINFELD, District Judge.

These are consolidated actions brought by the liquidators of an insolvent Hong Kong corporation, Hong Kong Deposit & Guaranty Co. ("HKDG"), which is also named as a plaintiff, to recover alleged loans to the individual defendants, Milton L. Hibdon, John M. Shaheen, and Bradford A. Shaheen. Defendants move, pursuant to Fed.R.Civ.P. 12(b)(1), to dismiss plaintiffs' claims for lack of subject matter jurisdiction. Defendants argue that plaintiff HKDG is not a citizen or subject of a "foreign state" within the meaning of Article III of the Constitution or 28 U.S.C. § 1332(a)(2), because Hong Kong has not been granted formal recognition by the executive branch of the United States government.[1]

Plaintiffs' response is two-fold. First, plaintiffs contend that the relevant citizenship is that of HKDG's liquidators who are named plaintiffs in the consolidated actions, and are British subjects. Second, plaintiffs contend that even if the bankrupt corporation's citizenship is determinative, HKDG is a citizen or subject of both Hong Kong, which according to plaintiffs, is a "foreign state," and Great Britain.

## DISCUSSION

The subject matter jurisdiction of this Court is governed, in the first instance, by

---

**1.** Also named as a plaintiff in the action against Bradford A. Shaheen, 83 Civ. 5896, is Stanley Uren ("Uren"), as Liquidator of Bil (Vila) Bank Ltd. ("BVB"). Defendants do not dispute that this Court has subject matter jurisdiction over Uren's claims as liquidator. Uren is a British subject; and BVB was originally incorporated under the laws of the Republic of Vanuatu, a country that has been officially recognized by the United States government.

*Compare Windert Watch Co. v. Remex Electronics Ltd.,* 468 F.Supp. 1242 (S.D.N.Y.1979) (Hong Kong is not a "foreign state") *with Tetra Finance (H.K.) Ltd. v. Shaheen,* 584 F.Supp. 847 (S.D.N.Y.1984) (Hong Kong is a "foreign state") (dictum).

Article III of the Constitution, which states in pertinent part:

> The judicial Power shall extend to all Cases ... between a State, or the Citizens thereof, and foreign States, Citizens or Subjects; [2]

and, as well, by 28 U.S.C. § 1332(a)(2), which provides in pertinent part:

> The district courts shall have original jurisdiction of all civil actions ... between—
>
> . . . .
>
> (2) citizens of a State and citizens or subjects of a foreign state.[3]

■ The Court need not reach the constitutional question whether Hong Kong, an entity with a unique international status, is in fact a "foreign state" within the meaning of Article III. To sustain their argument that this Court lacks subject matter jurisdiction, defendants must first establish that the Hong Kong citizenship of HKDG controls the jurisdictional determination. The Court finds to the contrary: the relevant citizenship is not that of the now defunct Hong Kong corporation, but rather, that of the individual liquidators, who are citizens or subjects of Great Britain, an entity which clearly is a "foreign state"

within the meaning of the pertinent constitutional and statutory provisions.

■ It is well-established that where a representative sues on behalf of another, it is the representative's citizenship that determines diversity and alienage jurisdiction.[4] As our Court of Appeals has stated:

> the general common law rule [is] that courts will look to the citizenship of a trustee, receiver, administrator, or other representative, and not the party which he represents, in determining diversity jurisdiction.[5]

That rule has been applied in cases involving United States' receivers [6] as well as a foreign trustee in bankruptcy suing on behalf of a bankrupt foreign corporation.[7] In *Clarkson Co., Ltd. v. Shaheen,* our Court of Appeals, following the general rule, found that a Canadian "trustee appointed under a law other than the Federal Bankruptcy Act may use his own citizenship in claiming diversity jurisdiction unless that law imposes its own restrictions." [8] Similarly, here, the relevant citizenship for determining subject matter jurisdiction is that of the liquidators, who have been duly appointed under Hong Kong law, and who, by

---

**2.** U.S. Const. art. III, § 2.

**3.** 28 U.S.C. § 1332(a)(2) (1982).

**4.** "[W]e have repeatedly held that representatives may stand upon their own citizenship in the federal courts irrespectively of the citizenship of the persons whom they represent ..." *New Orleans v. Gaines's Administrator,* 138 U.S. 595, 606, 11 S.Ct. 428, 431, 34 L.Ed. 1102 (1891); *see Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980); *Mecom v. Fitzsimmons Drilling Co., Inc.,* 284 U.S. 183, 186, 52 S.Ct. 84, 85, 76 L.Ed. 233 (1931); *Mexican Central R.R. v. Eckman,* 187 U.S. 429, 434, 23 S.Ct. 211, 213, 47 L.Ed. 245 (1903).

**5.** *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 628 (2d Cir.1976).

**6.** *See Gross v. Hougland,* 712 F.2d 1034 (6th Cir.1983) (receiver responsible for liquidating remaining assets of dissolved corporation), *cert. denied,* —— U.S. ——, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984); *Jump v. Manchester Life & Casualty*

*Management Corp.,* 579 F.2d 449, 452 n. 4 (8th Cir.1978) (Superintendent of Insurance appointed as liquidator).

**7.** *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 628 (2d Cir.1976); *accord Waxman v. Kealoha,* 296 F.Supp. 1190, 1192 (D.Hawaii 1969); *see also Chappedelaine v. Dechenaux,* 8 U.S. (4 Cranch) 306, 307–08, 2 L.Ed. 629 (1808) (citizenship of French plaintiff trustees controls rather than the Georgia citizenship of those they represent).

**8.** 544 F.2d 624, 628 (2d Cir.1976). It should be noted that the former Bankruptcy Act was interpreted as requiring that the citizenship of the bankrupt, rather than that of the trustee in bankruptcy was determinative for purposes of diversity jurisdiction. *See* Law of July 1, 1898, ch. 541, § 23, 30 Stat. 552 (omitted 1978). However, even while in force, this statute did not compel courts to refer to a foreign bankrupt's citizenship. *See Clarkson,* 544 F.2d at 627–28; *Waxman v. Kealoha,* 296 F.Supp. 1190, 1192–94 (D.Hawaii 1969).

statute, have the right to bring and defend actions on behalf of HKDG.[9]

In an attempt to avoid the force of the traditional rule, defendants contend that Hong Kong law "forbids" the liquidators from asserting their own citizenship. They rely upon a Hong Kong statute which provides that liquidators may bring suit "in the name and on behalf of the company." [10] Based on that statute, defendants argue that Hong Kong law requires liquidators to bring actions in the "name" of the company, and that *"a fortiori"* the liquidators must also rely upon the citizenship of the company.[11]

The logic of this argument is flawed from the start. Hong Kong law does not control this Court's subject matter jurisdiction; federal law does.[12] Our Court of Appeals noted in *Clarkson* that a foreign entity's laws "restricting" a trustee from asserting his own citizenship may, as a matter of federal policy, be relevant to the question of whose citizenship the Court should look to in determining its subject matter jurisdiction.[13] However, it does not follow that a procedural restriction on the "name" in which the liquidators may sue in Hong Kong courts is a "restriction" within the meaning of *Clarkson*. *Clarkson* refers to restrictions upon the assertion of citizenship in United States federal courts, not restrictions as to the name in the caption of an action. Moreover, contrary to defendants' apparent assumption, Hong Kong law does not, in the first instance, control the name in which suit is brought in federal court; Rule 17(a), Fed.R.Civ.P. does.[14] Finally, even if suit were required to be brought in the name of HKDG, it would not follow that this Court is *"a fortiori"* precluded from relying upon the liquidators' citizenship. As the Supreme Court has explicitly noted, there is no necessary relationship between the name in which an entity sues and the entity or person whose citizenship is relevant for determining diversity or alienage jurisdiction.[15] Cases in-

9. Companies Ordinance, Laws of Hong Kong, ch. 32, § 199 (Aug. 1984); *see Waxman v. Kealoha,* 296 F.Supp. 1190, 1194 n. 1 (D.Hawaii 1969).

10. Companies Ordinance, Laws of Hong Kong, ch. 32, § 199 (Aug.1984); *see also id.* § 194(f) ("a liquidator shall be described ... by the style of the liquidator ... of the particular company in respect of which he is appointed, and not by his individual name").

11. Defendants' Memorandum of Law at 5; Letter of Howard F. Husum, Esq., December 12, 1984 at 4.

12. "In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to the acts of states which have no power to enlarge or to contract the federal jurisdiction." *Grand Bahama Petroleum Co. v. Asiatic Petroleum,* 550 F.2d 1320, 1325 (2d Cir.1977) (quoting *Markham v. City of Newport News,* 292 F.2d 711, 713 (4th Cir.1961)). By referring to representatives' citizenship, federal courts necessarily rely upon and incorporate the state law by which the representative is empowered to act. However, that reference is a function of federal policies, most notably that the citizenship of real and substantial parties governs subject matter jurisdiction determinations, not that of nominal parties. *See infra* text accompanying note 17.

13. 544 F.2d at 627–28; *see Waxman v. Kealoha,* 296 F.Supp. 1190 (D.Hawaii 1969) (no federal policy prevents a Canadian receiver from bringing suit in federal court to recover debts for the bankrupt estate).

14. "[T]he question of in whose name the action may be prosecuted is procedural, and thus governed by federal law." *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.,* 485 F.2d 78, 83 (4th Cir.1973), *cert. denied,* 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974). Rule 17, however, in diversity cases, typically refers to state law to determine who is the "real party in interest," or the party vested with the right sought to be enforced. *See* J. Moore & J. Lucas, 3A *Moore's Federal Practice* ¶ 17.07 (1984). However, Rule 17(a) explicitly states that "[a]n executor, administrator, guardian, bailee, trustee of an express trust, ... or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought." Fed.R.Civ.P. 17(a). It has been held that under Rule 17(a) statutory liquidators' suits may be brought in their own name. *See Robertson v. Malone,* 190 F.2d 756, 759–60 (5th Cir. 1951); *accord Tetra Finance (HK) Ltd. v. Shaheen,* 584 F.Supp. 847, 849 (S.D.N.Y.1984).

15. "There is a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy. But the two rules serve different purposes and need not produce identical outcomes in all cases." *Navarro Ass'n v. Lee,* 446 U.S. 458,

volving unincorporated associations demonstrate this point: while suit may be brought in the name of the association, it is the citizenship of its members which determines diversity jurisdiction.[16]

Defendants next argue that even if Hong Kong law does not vitiate the general rule that representatives' citizenship controls, the rule is inapplicable, since the liquidators are not "real parties in interest." Here, defendants invoke a fundamental principle supporting the general rule: only the citizenship of real and substantial parties to the controversy determines jurisdiction; the citizenship of nominal parties is irrelevant for jurisdictional purposes.[17] In support of their argument, defendants point to the fact that many of the liquidators' actions require sanction by the Hong Kong bankruptcy court or by the Committee of Inspection, a group of the insolvent corporation's creditors. Defendants contend that because of these restrictions on the actual power of the liquidators, they are only nominal parties whose citizenship must be ignored. This contention is without substance.

■ Defendants' characterization of the liquidators as nominal parties runs counter to the Supreme Court's decision in *Navarro Savings Association v. Lee.*[18] In *Navarro*, the Supreme Court unequivocally rejected an approach to the real party in interest question which would require an assessment of the representative's actual powers, in favor of "the relative simplicity of [the] established principle" that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others."[19] Hong Kong law confers such customary powers upon its liquidators.[20] Under Section 199 of the Hong Kong Companies Ordinance, liquidators are vested with significant powers to "carry on the business of the company," to dispose of the insolvent corporation's assets, to adjust claims, to conduct litigation, and to "do all such other things necessary to wind up the affairs of the company."[21] This is a broad and inclusive grant of power to the liquidators. That the exercise of some of these powers is subject to approval by the Hong Kong bankruptcy courts or by the Committee of Inspection does not vitiate them; nor render them any less "customary."[22] There can be no doubt that the liquidators' control over HKDG's assets is "real and substantial."[23]

■ Finally, defendants assert, in what they characterize as their "principal" argument, that reliance upon the liquidators' citizenship will allow a foreign entity that is *not* a "foreign state," or a citizen thereof, "to, in effect, 'achieve' such recognized status by appointing 'British subjects' as its corporate liquidators." In other words, defendants claim that by finding the liquidators' citizenship controlling, this Court will emasculate the force of Article III of the Constitution by allowing unrecognized states or citizens thereof to circumvent its limitations. Assuming, as the argument does, that Hong Kong is an unrecognized

---

462 n. 9, 100 S.Ct. 1779, 1782 n. 9, 64 L.Ed.2d 425 (1980); *see supra* note 14.

**16.** *United Steelworkers of Am. v. R.H. Bouligny Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *see Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 462 n. 9, 100 S.Ct. 1779, 1782 n. 9, 64 L.Ed.2d 425 (1980).

**17.** *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 460–61, 100 S.Ct. 1779, 1781–1782, 64 L.Ed.2d 425 (1980).

**18.** 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980).

**19.** *Id.* at 464 & n. 13, 100 S.Ct. at 1783 & n. 13.

**20.** *Accord Tetra Finance (HK) Ltd. v. Shaheen,* 584 F.Supp. 847, 849 (S.D.N.Y.1984).

**21.** Companies Ordinance, Laws of Hong Kong, ch. 32, § 199 (Aug. 1984).

**22.** The principles embodied in the sections of the Hong Kong Companies Ordinance relied upon by defendants are analogous to those contained in American bankruptcy law, and some have precise counterparts.
*See e.g.,* 11 U.S.C. §§ 324, 705(b) (1982).

**23.** *Navarro,* 446 U.S. at 465, 100 S.Ct. at 1784.

foreign state, the Court nevertheless finds its implications untenable.

By invoking such terms as "bootstrap," "achieve," or "create," defendants imply that reference to the liquidators' citizenship as distinguished from the Hong Kong citizenship of HKDG, will engender collusive attempts to invoke federal courts' jurisdiction. There is no evidence here, however, that Hong Kong or HKDG appointed British liquidators for the express purpose of bringing suit in the United States. Moreover, this Court's holding will not open the door for foreign manipulation of federal subject matter jurisdiction in the alienage context to any greater extent than States are theoretically able to influence federal courts' jurisdiction in the diversity context, given federal courts' reliance upon representatives' citizenship, and the States' power to determine who those representatives are.[24]

Defendants' "principal" argument also implies that reference to the liquidators' citizenship leads to results inconsistent with the purposes of Article III. However, where the real party in interest is a British citizen, the purposes of alienage jurisdiction are served rather than threatened. Federal courts were granted jurisdiction over cases involving United States citizens and citizens of foreign states based on "the fear of giving offense to foreign countries."[25] Providing a federal forum for the adjudication of such controversies serves an important national interest in avoiding "any possible appearance of injustice or tenable ground for resentment" in the relations of this country with other nations.[26]

That interest is implicated where the active parties to a litigation are citizens of Britain, a recognized foreign state, regardless of the diplomatic status of Hong Kong.[27]

Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

So ordered.

---

24. Federal courts' reference to representatives' citizenship theoretically affords States or foreign entities the opportunity to affect federal courts' determination of their subject matter jurisdiction by passing laws conferring representative status. Such an unlikely eventuality is protected against by referring only to the citizenship of real parties in interest, not nominal parties whose representative status derives from purely procedural, and hence, easily manipulable laws.

25. *Sadat v. Mertes,* 615 F.2d 1176, 1183 (7th Cir.1980); *see* The Federalist No. 80 (A. Hamilton).

26. *Sadat v. Mertes,* 615 F.2d 1176, 1182 n. 7. (7th Cir.1980) (quoting American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts 108 (1969)).

27. That HKDG is named as a party to this action is of no consequence to the decision upon this motion. Having found that the liquidators are the real parties in interest, it follows that, as a nominal party, HKDG's citizenship is irrelevant for the purposes of determining subject matter jurisdiction. *See supra* text accompanying notes 17-23.